Lina Stillman, Esq.
STILLMAN LEGAL, P.C.
42 Broadway, 12th Floor
New York, New York 10004
Tel.: (212) 832-1000
www.stillmanlegalpc.com
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FRANKLIN GEOVANNY LOOR GASPAR,<br><br>Plaintiff,<br><br>v.<br><br>COTO GLASS, LLC and<br>LUIS COELHO DE SA,<br><br>Defendants. | Civil Action No. _______________<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff FRANKLIN GEOVANNY LOOR GASPAR, by and through his attorneys, Stillman Legal, P.C., as and for his Complaint against Defendants COTO GLASS, LLC and LUIS COELHO DE SA, alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff Franklin Geovanny Loor Gaspar ("Plaintiff") brings this action against his former employers, Coto Glass, LLC ("Coto Glass") and Luis Coelho De Sa ("De Sa") (together, "Defendants"), to recover unpaid overtime compensation and other relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.* (the "NJWHL"), and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.* (the "NJWPL").

2. From on or about October 30, 2023 through on or about March 17, 2026, Plaintiff worked for Defendants as a non-supervisory helper performing manual glazing, glass-installation, and aluminum-fabrication work at commercial construction sites in New Jersey.

3. Defendants paid Plaintiff a flat weekly amount that was intended to compensate a forty-hour workweek. Defendants did not pay Plaintiff any additional premium for hours worked in excess of forty in a workweek, even though Plaintiff regularly worked substantially more than forty hours per week.

4. Defendants also failed to pay Plaintiff's wages when they came due, delivered to Plaintiff at least one payroll check that Defendants instructed him not to negotiate, withheld amounts from his pay on account of damaged tools, and failed to pay a weekly wage rate that Defendants had promised him.

5. Plaintiff brings this action on his own behalf only. He seeks unpaid overtime compensation, unpaid wages, liquidated damages, prejudgment and post-judgment interest, reasonable attorneys' fees and costs, and such other relief as the Court deems just and proper.

**JURISDICTION AND VENUE**

6. This Court has original subject-matter jurisdiction over Plaintiff's federal claim under 28 U.S.C. § 1331, because that claim arises under the laws of the United States, and under 29 U.S.C. § 216(b), which authorizes an action by an employee in any court of competent jurisdiction.

7. This Court has supplemental jurisdiction over Plaintiff's New Jersey statutory claims under 28 U.S.C. § 1367(a). Those claims arise from the same employment relationship, the same work schedule, and the same compensation practices that give rise to Plaintiff's

FLSA claim, and therefore form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2). Upon information and belief, both Defendants reside in New Jersey, and a substantial part of the events and omissions giving rise to Plaintiff's claims — including the work Plaintiff performed, the schedule Defendants set, and the payments Defendants made and failed to make — occurred in this District.

9. This Court has personal jurisdiction over Defendants. Upon information and belief, Coto Glass is organized under the laws of New Jersey and maintains its principal place of business in New Jersey, and De Sa resides in New Jersey and conducts business in New Jersey.

## PARTIES

### *Plaintiff*

10. Plaintiff Franklin Geovanny Loor Gaspar is an adult individual residing at 168 Bloomfield Avenue, Newark, Essex County, New Jersey.

11. At all times relevant to this Complaint, Plaintiff was an "employee" within the meaning of 29 U.S.C. § 203(e)(1), N.J.S.A. 34:11-56a1(h), and N.J.S.A. 34:11-4.1(b).

12. At all times relevant to this Complaint, Plaintiff was a non-exempt employee entitled to overtime compensation under the FLSA and the NJWHL.

### *Corporate Defendant*

13. Upon information and belief, Defendant Coto Glass, LLC is a limited liability company organized and existing under the laws of the State of New Jersey, engaged in the business

of supplying, fabricating, and installing glass, glazing systems, aluminum framing, windows, and architectural façade panels for commercial and residential construction projects.

14. The payroll checks Defendants issued to Plaintiff bear two drawer names and two addresses. Checks issued during 2024 identify the drawer as "COTO GLASS LIMITED LIABILITY COMPANY," 66 Main Street, Floor 2, Newark, New Jersey 07105-3512. Checks issued during 2025 and 2026 identify the drawer as "Coto Glass, LLC.," 9 Martin Place, Irvington, New Jersey 07111.

15. Upon information and belief, "Coto Glass Limited Liability Company" and "Coto Glass, LLC" refer to the same entity. All of the payroll checks identified in this Complaint were drawn on the same Citizens Bank deposit account, bear the same routing number and the same account number, and bear the same authorized signature. Plaintiff's employment, duties, supervisor, worksites, and method of payment did not change when the name and address printed on the checks changed.

16. In the alternative, and upon information and belief, if the two names identify two distinct entities, those entities operated as a single integrated enterprise and as joint employers of Plaintiff, sharing common ownership, common management, common control of labor relations, interrelated operations, and a single payroll account.

***Individual Defendant***

17. Upon information and belief, Defendant Luis Coelho De Sa — also known as Luis Sa, and addressed by Plaintiff and other workers as "Jefe Luis" (Spanish for "Boss Luis") — is an owner and managing member of Coto Glass and is an adult individual residing in New Jersey.

18. At all times relevant to this Complaint, each Defendant was an "employer" of Plaintiff within the meaning of 29 U.S.C. § 203(d), N.J.S.A. 34:11-56a1(g), and N.J.S.A. 34:11-4.1(a).

## EMPLOYER AND JOINT-EMPLOYER ALLEGATIONS

19. De Sa hired Plaintiff. Plaintiff was interviewed by, and received his offer of employment and his initial terms of pay from, De Sa personally.

20. De Sa determined the days on which Plaintiff worked and the hours Plaintiff was required to work.

21. De Sa communicated directly with Plaintiff, by WhatsApp message and by telephone, concerning whether and when Plaintiff was to report to work.

22. De Sa determined the amount of Plaintiff's compensation, the rate at which Plaintiff was paid, and the method by which Plaintiff was paid, including the decision to pay Plaintiff a flat weekly amount rather than an hourly wage.

23. De Sa determined and communicated the jobsites to which Plaintiff was assigned, and directed that Plaintiff travel to and work at particular locations, including a jobsite in Pennsylvania in or about June 2025.

24. De Sa supervised Plaintiff's work and the work of Defendants' other employees.

25. De Sa controlled Defendants' employment and time information. Plaintiff reported his work to De Sa by message. Plaintiff was never provided with, and was never able to review, any record of the hours Defendants recorded for him.

26. De Sa controlled whether, when, and how Plaintiff's wages were paid.

27. Upon information and belief, De Sa had and exercised the authority to hire and to discharge Defendants' employees.

28. By reason of the foregoing, De Sa acted directly and indirectly in the interest of Coto Glass in relation to Plaintiff, possessed and exercised operational control over the terms and conditions of Plaintiff's employment, and is individually liable as Plaintiff's employer under the FLSA, the NJWHL, and the NJWPL.

29. Defendants jointly employed Plaintiff. As a matter of economic reality, Plaintiff was economically dependent upon Defendants, who together controlled his schedule, his assignments, his rate and method of pay, and his continued employment.

## FLSA COVERAGE

### *Enterprise Coverage*

30. At all relevant times, Coto Glass performed related activities through unified operation and common control for a common business purpose, and was therefore an "enterprise" within the meaning of 29 U.S.C. § 203(r).

31. At all relevant times, Coto Glass had employees, including Plaintiff, who handled, sold, or otherwise worked on goods or materials that had been moved in or produced for interstate commerce. Those goods and materials included architectural glass, aluminum extrusions and framing components, windows, façade panels, silicone sealant, glass suction cups, metal-cutting saws, and power drills.

32. Upon information and belief, and based on Plaintiff's personal observation, Defendants purchased tools and construction materials from The Home Depot, a national retail chain that sources and distributes goods across state lines.

33. Upon information and belief, Coto Glass had an annual gross volume of sales made or business done of not less than $500,000, exclusive of excise taxes at the retail level, in each calendar year relevant to this action. This allegation is made on information and belief because Defendants' revenue records are within Defendants' exclusive possession, custody, and control. It is supported by the following facts within Plaintiff's knowledge:

(a) Coto Glass employed approximately seven workers during Plaintiff's employment;

(b) Coto Glass paid those workers weekly wages that, in Plaintiff's own case, ranged from approximately $700 to approximately $960 per week, such that Defendants' direct labor cost alone substantially exceeded $250,000 per year;

(c) Coto Glass operated as a glazing and curtain-wall subcontractor on commercial construction projects at multiple jobsites, including in Newark, Jersey City, and Bayonne, New Jersey; and

(d) Coto Glass performed work outside New Jersey, including a project in Pennsylvania to which Defendants assigned Plaintiff in or about June 2025.

34. Coto Glass was therefore an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

***Individual Coverage (Pleaded in the Alternative)***

35. In the alternative, Plaintiff was individually engaged in commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a)(1).

36. In or about June 2025, Defendants sent Plaintiff across state lines to perform work in Pennsylvania, and Plaintiff remained there for at least several days. Plaintiff so advised De Sa by message on June 26, 2025.

37. Throughout his employment, Plaintiff regularly used instrumentalities of interstate commerce in the performance of his job, including a cellular telephone network and an internet-based messaging service, to receive work assignments, report his work, and communicate with De Sa.

38. Plaintiff does not rely solely upon his handling of goods that had previously travelled in interstate commerce as the basis for individual coverage.

39. At all relevant times, Plaintiff performed his work in New Jersey for a New Jersey employer, and is therefore covered by the NJWHL and the NJWPL.

## FACTUAL ALLEGATIONS

### *Plaintiff's Employment*

40. De Sa hired Plaintiff on or about October 30, 2023.

41. Plaintiff worked for Defendants continuously from on or about October 30, 2023 through on or about March 17, 2026, except for brief interruptions of a few days at a time when Defendants had no materials available for the jobsite.

42. Plaintiff was not discharged. Plaintiff stopped working for Defendants because Defendants repeatedly failed to pay him the full amount he was owed and repeatedly failed to pay him when payment was due.

### *Plaintiff's Duties and Non-Exempt Status*

43. Plaintiff's job title was helper (ayudante).

44. Plaintiff's duties consisted of manual labor. They included cutting aluminum; lifting, carrying, and positioning glass panels using suction cups; assisting in the installation of glass, aluminum framing, windows, and architectural façade panels; applying silicone sealant; assisting with the installation of solar panels; and unloading shipping containers of materials at the jobsite.

45. The tools Plaintiff used were hand tools and portable power tools, including glass suction cups, a metal-cutting saw, and a drill.

46. Plaintiff performed this work at customers' construction sites, including sites in Newark, Jersey City, and Bayonne, New Jersey, and, in or about June 2025, at a site in Pennsylvania.

47. Plaintiff did not supervise any employee. Plaintiff had no authority to hire, discharge, discipline, evaluate, schedule, or direct the work of any other worker, and no authority to recommend any such action.

48. Plaintiff performed no office or non-manual work directly related to the management or general business operations of Defendants or Defendants' customers. He did not negotiate contracts, purchase materials, set prices, bid work, hire subcontractors, maintain payroll, or make any decision of business significance.

49. Plaintiff exercised no discretion or independent judgment with respect to matters of significance. He performed the tasks assigned to him by De Sa at the locations to which he was directed.

50. Plaintiff was not employed in a bona fide executive, administrative, professional, outside-sales, or computer-related capacity, and no exemption under 29 U.S.C. § 213 or 29 C.F.R. Part 541 applied to him. No exemption under the NJWHL applied to him.

***Plaintiff's Work Schedule***

51. Plaintiff was regularly scheduled to work Monday through Friday.

52. Plaintiff's workday began at approximately 7:30 a.m.

53. When Defendants hired Plaintiff, De Sa told him that the workday would be eight hours long and would end at approximately 3:30 p.m.

54. In practice, Plaintiff's workday did not end at 3:30 p.m. Plaintiff typically continued working until approximately 5:00 p.m., and frequently until approximately 5:30 p.m.

55. Plaintiff was nominally afforded a thirty-minute meal period each day. Plaintiff was not permitted to leave the worksite during the meal period. On days when a container of materials had to be unloaded, Plaintiff's meal period was interrupted and he continued to perform work.

56. Upon information and belief, Defendants treated a thirty-minute meal period as non-working time in every workday, including days on which Plaintiff's meal period was interrupted and he in fact performed work.

57. To the extent Plaintiff's meal periods were interrupted or he was not completely relieved of duty during them, those meal periods were compensable hours worked under 29 C.F.R. § 785.19, and the weekly hours alleged below are correspondingly understated.

***Representative Workweek***

58. Solely for purposes of illustrating Plaintiff's ordinary schedule, and treating the nominal thirty-minute meal period as non-compensable, Plaintiff's typical workweek was as follows:

(a) Days worked: Monday through Friday, five days;

(b) Start time: approximately 7:30 a.m.;

(c) End time: approximately 5:00 p.m., and frequently approximately 5:30 p.m.;

(d) Meal period: thirty minutes, treated as non-compensable for purposes of this allegation;

(e) Daily compensable hours: approximately 9.0 hours when the day ended at 5:00 p.m. (9.5 hours elapsed, less 0.5 hour), and approximately 9.5 hours when the day ended at 5:30 p.m. (10.0 hours elapsed, less 0.5 hour); and

(f) Weekly compensable hours: approximately 45.0 hours to approximately 47.5 hours, of which approximately 5.0 to 7.5 hours were in excess of forty.

59. The foregoing figures exclude any Saturday work and exclude any interrupted meal period. Plaintiff worked on some Saturdays. Plaintiff cannot presently identify the specific Saturdays he worked or the frequency of that work, and does not include Saturday hours in the representative workweek alleged above.

60. In some workweeks Plaintiff worked fewer hours, or did not work at all, because Defendants had no materials available. Plaintiff does not allege that he worked more than forty hours in every workweek of his employment, and does not seek overtime compensation for any workweek in which he did not work more than forty hours.

61. Plaintiff worked more than forty hours in the great majority of the workweeks of his employment.

62. The workweek of Monday, July 29, 2024 through Sunday, August 4, 2024 is an identified example. Defendants paid Plaintiff for that week by check number 1110, dated August 4,

2024, in the amount of $850.00, bearing the memorandum "5 Days — week 29 to 03 of July, August 2024." Plaintiff worked five days that week on his ordinary schedule, beginning at approximately 7:30 a.m. and ending at approximately 5:00 p.m. to 5:30 p.m., for approximately 45.0 to 47.5 compensable hours.

63. For that workweek, Plaintiff's regular rate of pay was $21.25 per hour ($850.00 ÷ 40 hours), and the overtime rate to which he was entitled was $31.88 per hour. Defendants owed Plaintiff approximately $159.38 in overtime compensation if he worked 45.0 hours that week, and approximately $239.06 if he worked 47.5 hours that week. Defendants paid Plaintiff no overtime compensation for that week.

### ***Defendants' Compensation Practices***

64. Defendants paid Plaintiff a flat weekly amount. Defendants never quoted, agreed to, or paid Plaintiff an hourly rate of pay.

65. The flat weekly amount Defendants paid Plaintiff was intended to compensate a forty-hour workweek. De Sa told Plaintiff at the outset of his employment that the workday would be eight hours, ending at approximately 3:30 p.m., which corresponds to a forty-hour workweek over the five days Plaintiff was scheduled to work.

66. The weekly amount Defendants paid Plaintiff changed at various times during his employment. Plaintiff's present recollection is that his weekly pay was approximately $700 to $750 per week at the outset, increased at various points to approximately $800, $850, and $900 per week, and that Defendants at one point promised him $960 per week. Plaintiff's recollection of the precise rates and the precise dates on which each change took effect is approximate. The amounts Defendants actually paid, and the dates of each

change, are established by Defendants' payroll records, which are within Defendants' exclusive possession, custody, and control.

67. The amounts Defendants actually paid Plaintiff varied from week to week. Payroll checks in Plaintiff's possession include, without limitation, the following:

(a) check number 1067, dated July 2, 2024, in the amount of $850.00, memorandum "5 Days";

(b) check number 1110, dated August 4, 2024, in the amount of $850.00, memorandum "5 Days — week 29 to 03 of July, August 2024";

(c) check number 1244, dated October 28, 2024, in the amount of $680.00, memorandum "Pay Period: 10/21/2024 to 10/26/2024 — Paid: 4 Days / Ded.: 1 Day Oct 15";

(d) check number 1255, dated November 4, 2024, in the amount of $966.87, memorandum "Pay Period: 10/28/2024 to 11/02/2024";

(e) check number 1291, dated December 2, 2024, in the amount of $720.00;

(f) check number 1300, dated December 9, 2024, in the amount of $900.00;

(g) check number 1308, dated December 16, 2024, in the amount of $900.00;

(h) check number 001623, dated December 8, 2025, in the amount of $914.38;

(i) check number 001629, dated December 13, 2025, in the amount of $403.75;

(j) check number 001647, dated January 3, 2026, in the amount of $570.00;

(k) check number 001653, dated January 10, 2026, in the amount of $1,140.00; and

(l) check number 001665, dated January 24, 2026, in the amount of $760.00.

68. The amount Defendants paid Plaintiff in a given week did not increase in proportion to the number of hours Plaintiff worked in that week. Plaintiff received the same weekly amount whether he worked forty hours or substantially more than forty hours.

69. Where an employer pays a non-exempt employee a weekly salary intended to compensate a fixed workweek of forty hours, the employee's regular rate is determined by dividing the weekly salary by forty, and the employee is entitled to additional compensation at one and one-half times that regular rate for each hour worked in excess of forty. 29 C.F.R. §§ 778.109, 778.113(a).

70. Defendants and Plaintiff never reached any understanding that Plaintiff's weekly pay would compensate all hours worked in a week, however many or few those hours might be. Defendants never paid Plaintiff any additional premium of any kind for any hour worked beyond forty in any workweek, and accordingly no fluctuating-workweek method of computation is available to Defendants. *See* 29 C.F.R. § 778.114.

***Defendants' Failure to Pay Overtime***

71. Throughout Plaintiff's employment, Defendants did not pay Plaintiff one and one-half times his regular rate of pay for hours worked in excess of forty in a workweek.

72. Throughout Plaintiff's employment, Defendants did not pay Plaintiff any overtime premium in any amount, at any rate, in any workweek.

73. Defendants never told Plaintiff that he was entitled to overtime compensation, never identified any overtime hours on any document given to Plaintiff, and never identified any overtime payment on any document given to Plaintiff.

***Late Payment, Non-Negotiable Checks, and Deductions***

74. Defendants did not pay Plaintiff's wages on a regular payday within ten working days after the end of the pay period. Plaintiff's wages were frequently late, on occasion by as much as approximately three weeks.

75. On more than one occasion, Defendants delivered a payroll check to Plaintiff and then instructed him that the check could not yet be deposited or cashed. Defendants did not make suitable arrangements for Plaintiff to convert those checks into cash on demand at full face value.

76. In January 2026, Plaintiff asked De Sa on January 10, January 12, and January 14, 2026 whether he could deposit a payroll check Defendants had already delivered to him.

77. On January 21, 2026, Plaintiff advised De Sa that he could not report for work that day because he had to go to the bank concerning problems with the account.

78. Upon information and belief, payroll checks Defendants issued to Plaintiff were on occasion dishonored or returned unpaid. On some of those occasions Defendants subsequently paid Plaintiff the amount of the dishonored check in cash.

79. Defendants withheld or diverted portions of Plaintiff's wages on account of tools that were damaged in the course of the work. Plaintiff cannot presently identify the amount or the date of each such withholding. The amounts and dates are established by Defendants' payroll records, which are within Defendants' exclusive possession, custody, and control.

80. Defendants did not obtain Plaintiff's written authorization for any withholding on account of damaged tools, and no such withholding was authorized by any law, rule, or regulation.

81. Check number 1244, dated October 28, 2024, in the amount of $680.00, bears the memorandum "Pay Period: 10/21/2024 to 10/26/2024 — Paid: 4 Days / Ded.: 1 Day Oct 15," reflecting on its face that Defendants withheld one day of pay from the wages due for that pay period on account of a day falling outside that pay period.

82. Defendants promised Plaintiff that he would be paid $960 per week. Defendants paid Plaintiff $960 for approximately two weeks only, and thereafter paid him less than the promised rate.

83. In at least one workweek in which Plaintiff was to be paid $960, Defendants paid him $880, a shortfall of $80. Plaintiff cannot presently identify the specific workweek. The date is established by Defendants' payroll records.

***Defendants' Records and Wage Statements***

84. Defendants did not furnish Plaintiff with a paystub, wage statement, or any other document identifying the hours he worked, the rate or rates at which he was paid, his gross wages, any deductions taken, or his net wages.

85. Plaintiff reported his work to De Sa by WhatsApp message. Plaintiff was never provided access to, and could not review, any record of the hours Defendants recorded for him. The only records of Plaintiff's hours were maintained by or at the direction of De Sa.

86. Upon information and belief, Defendants failed to make, keep, and preserve accurate records of the hours Plaintiff worked each workday and each workweek, of Plaintiff's

regular rate of pay, and of the overtime compensation due and paid, as required by 29 U.S.C. § 211(c), 29 C.F.R. § 516.2, and N.J.A.C. 12:56-4.1.

87. Upon information and belief, an individual known to Plaintiff as Nelson adjusted, reduced, or altered the hours recorded for Plaintiff. Plaintiff has no personal knowledge of Defendants' internal recordkeeping; this allegation is made on information and belief based on statements made to Plaintiff during his employment and on the difference between the hours Plaintiff worked and the amounts Defendants paid. The identity of that individual, his authority, and the nature of any alterations are matters within Defendants' knowledge and are subject to discovery.

88. To the extent Defendants failed to keep accurate records of the hours Plaintiff worked, Plaintiff is entitled to prove the amount and extent of that work as a matter of just and reasonable inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).

89. Defendants treated Plaintiff as an employee for tax and payroll purposes. Defendants paid Plaintiff by company payroll check, directed Plaintiff to complete an Internal Revenue Service Form W-4, and told Plaintiff that a Form W-2 would be issued to him. On January 26, 2026, Plaintiff asked De Sa for his Form W-2 so that he could file his tax return; De Sa replied, "Estou a fazer o mais rápido, vai ter brevemente" ("I am doing it as fast as I can, you will have it shortly"). Plaintiff did not receive a Form W-2 from Defendants for the 2025 tax year.

### *Willfulness and Absence of Good Faith*

90. Defendants knew, or showed reckless disregard for whether, their compensation practices violated the FLSA and the NJWHL.

91. De Sa personally set Plaintiff's start time, personally directed Plaintiff's daily assignments, and personally communicated with Plaintiff about his work by message. Defendants therefore knew when Plaintiff began work each day and knew that he continued working well past the eight-hour day De Sa had described at hire.

92. Notwithstanding that knowledge, Defendants paid Plaintiff a flat weekly amount with no overtime premium of any kind in any workweek across an employment of approximately twenty-nine months.

93. Defendants' failure to keep accurate time records, failure to furnish wage statements, repeated late payment of wages, delivery of payroll checks that Plaintiff was instructed not to negotiate, and withholding of wages for damaged tools further evidence that Defendants did not attempt in good faith to ascertain or comply with their obligations under federal and state wage law.

94. Defendants did not act in good faith and had no reasonable grounds for believing that their failure to pay overtime compensation complied with the FLSA. *See* 29 U.S.C. § 260.

95. Defendants' violations of the FLSA were willful within the meaning of 29 U.S.C. § 255(a), and a three-year limitations period applies to Plaintiff's FLSA claim.

## **COUNT I**

### ***Unpaid Overtime Compensation Under the Fair Labor Standards Act, 29 U.S.C. §§ 207(a)(1), 215(a)(2), and 216(b)***

96. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

97. At all relevant times, Defendants were Plaintiff's employers within the meaning of 29 U.S.C. § 203(d), and Plaintiff was Defendants' employee within the meaning of 29 U.S.C. § 203(e)(1).

98. At all relevant times, Plaintiff was covered by the FLSA under 29 U.S.C. § 203(s)(1)(A) and, in the alternative, under 29 U.S.C. §§ 206(a) and 207(a)(1).

99. At all relevant times, Plaintiff was a non-exempt employee.

100. Section 207(a)(1) of the FLSA required Defendants to compensate Plaintiff at a rate not less than one and one-half times his regular rate of pay for all hours worked in excess of forty in a workweek.

101. Plaintiff worked in excess of forty hours in numerous workweeks during his employment, including the workweek of July 29 through August 4, 2024.

102. Defendants failed to compensate Plaintiff at one and one-half times his regular rate for hours worked in excess of forty in a workweek, in violation of 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

103. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

104. As a direct and proximate result of Defendants' violations, Plaintiff has been damaged in the amount of his unpaid overtime compensation, in an amount to be determined at trial.

105. Plaintiff is entitled to recover his unpaid overtime compensation, an additional equal amount as liquidated damages, reasonable attorneys' fees, and the costs of this action, pursuant to 29 U.S.C. § 216(b).

## COUNT II

***Unpaid Overtime Compensation Under the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a et seq.***

106. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

107. At all relevant times, Defendants were Plaintiff's employers within the meaning of N.J.S.A. 34:11-56a1(g), and Plaintiff was Defendants' employee within the meaning of N.J.S.A. 34:11-56a1(h).

108. At all relevant times, Plaintiff was a non-exempt employee under the NJWHL and was not subject to any exemption set forth in N.J.S.A. 34:11-56a4 or the regulations promulgated thereunder.

109. N.J.S.A. 34:11-56a4 required Defendants to pay Plaintiff not less than one and one-half times his regular hourly wage for each hour worked in excess of forty in any workweek.

110. Defendants failed to pay Plaintiff one and one-half times his regular hourly wage for hours worked in excess of forty in a workweek, in violation of N.J.S.A. 34:11-56a4.

111. Defendants' violations of the NJWHL were knowing and not in good faith.

112. Plaintiff is entitled to recover the full amount of his unpaid overtime wages, liquidated damages of up to two hundred percent of those wages pursuant to N.J.S.A. 34:11-56a25.2, and reasonable attorneys' fees and costs pursuant to N.J.S.A. 34:11-56a25, for the period permitted by N.J.S.A. 34:11-56a25.1.

## COUNT III

***Unpaid Wages, Unlawful Withholding, and Untimely Payment Under the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 et seq.***

113. Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

114. At all relevant times, Defendants were Plaintiff's employers within the meaning of N.J.S.A. 34:11-4.1(a), and Plaintiff was Defendants' employee within the meaning of N.J.S.A. 34:11-4.1(b).

115. The compensation Defendants agreed to pay Plaintiff, including the agreed weekly rate and the overtime compensation required by law, constituted "wages" within the meaning of N.J.S.A. 34:11-4.1(c).

116. N.J.S.A. 34:11-4.2 required Defendants to pay Plaintiff the full amount of wages due to him on a regular payday designated in advance, not later than ten working days after the end of the pay period, and to pay those wages in lawful money or by a check that Plaintiff could convert into cash on demand at full face value.

117. Defendants violated N.J.S.A. 34:11-4.2 by failing to pay Plaintiff the full amount of wages due on the regular payday, including by paying him as much as approximately three weeks late.

118. Defendants further violated N.J.S.A. 34:11-4.2 by delivering to Plaintiff payroll checks that could not be converted into cash at full face value when delivered, by instructing Plaintiff not to deposit or cash such checks, and by issuing checks that were dishonored.

119. N.J.S.A. 34:11-4.4 prohibited Defendants from withholding or diverting any portion of Plaintiff's wages except as required or empowered by law or as expressly permitted by that section.

120. Defendants violated N.J.S.A. 34:11-4.4 by withholding portions of Plaintiff's wages on account of damaged tools, a purpose that is neither required by law nor among the withholdings permitted by that section, and by withholding one day of pay as reflected on the face of check number 1244.

121. Defendants further violated the NJWPL by failing to pay Plaintiff the agreed rate of $960 per week after promising that rate, including in at least one workweek in which Defendants paid Plaintiff $880 rather than the agreed $960.

122. As a direct and proximate result of Defendants' violations of the NJWPL, Plaintiff has been damaged in an amount to be determined at trial.

123. Plaintiff is entitled to recover the wages owed to him, liquidated damages of up to two hundred percent of those wages, and reasonable attorneys' fees and costs, pursuant to N.J.S.A. 34:11-4.10.

124. Plaintiff does not seek under this Count any recovery duplicative of the overtime compensation sought under Counts I and II.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, providing the following relief:

(a) A declaratory judgment that the practices complained of herein violate the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the New Jersey Wage and Hour Law, N.J.S.A. 34:11-56a *et seq.*, and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et seq.*;

(b) An award of unpaid overtime compensation due under the FLSA, 29 U.S.C. § 207(a)(1), and the NJWHL, N.J.S.A. 34:11-56a4, in an amount to be determined at trial;

(c) An award of unpaid wages due under the NJWPL, N.J.S.A. 34:11-4.1 *et seq.*, including wages unlawfully withheld and wages unpaid at the agreed rate, in an amount to be determined at trial;

(d) An award of liquidated damages in the greatest amount permitted by law, being either an additional equal amount pursuant to 29 U.S.C. § 216(b) or liquidated damages of up to two hundred percent of unpaid wages pursuant to N.J.S.A. 34:11-56a25.2 and N.J.S.A. 34:11-4.10, whichever is greater, it being expressly stated that Plaintiff does not seek duplicative liquidated damages upon the same unpaid wages under more than one statute;

(e) Prejudgment interest on Plaintiff's state-law claims to the extent permitted by law and not duplicative of liquidated damages awarded on the same wages;

(f) Post-judgment interest pursuant to 28 U.S.C. § 1961;

(g) Reasonable attorneys' fees and the costs and disbursements of this action pursuant to 29 U.S.C. § 216(b), N.J.S.A. 34:11-56a25, and N.J.S.A. 34:11-4.10;

(h) Leave to amend this Complaint as warranted by facts developed in discovery, including as to the identity and liability of any additional or successor entity; and

(i) Such other and further relief as this Court deems just and proper.

In accordance with L. Civ. R. 8.1, no specific dollar amount is stated in this Complaint for unliquidated damages.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.

**CERTIFICATION PURSUANT TO L. CIV. R. 11.2**

The undersigned certifies that, to the best of her knowledge and belief, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

Dated: August 6, 2026
New York, New York

Respectfully submitted,

STILLMAN LEGAL, P.C.

By: Lina F Stillman, Esq.

Lina Stillman, Esq.
42 Broadway, 12th Floor
New York, New York 10004
Tel.: (212) 203-2417
*Attorneys for Plaintiff*
*Franklin Geovanny Loor Gaspar*